[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties appeared for trial in a limited contested dissolution of marriage action. The wife, whose maiden name was Barbara Engel, and the husband intermarried at Redding, Connecticut on April 9, 1972. One of the parties has resided in the State of Connecticut for at least twelve months preceding the date of the filing of the complaint. The court finds that the marriage has broken down irretrievably. Two minor children have been born since the date of this marriage: to wit, Jennifer Ann, born April 10, 1976; and Stephanie Kay, born January 26, 1978. A son was also born of the marriage in May of 1972.
The wife was born in Australia on May 19, 1944. The defendant husband was born in Norwalk, Connecticut on April 2, 1945.
The wife was trained as a nurse in Australia. She decided to go to Germany where she worked in a British hospital as a nurse. She met the defendant on a blind date while he was in the Air Force. She went out for a period of months with him and found herself pregnant. The defendant who was near being discharged from the Air Force sought to have her come to the United States where they could marry after his separation from the service. They were married in April, 1972 and their son, Brian, was born in May of 1972. CT Page 11833
During the marriage, she worked as an nurse's aide two nights a week on the 11:00 P.M. to 7:00 A.M. shift. She and her husband did discuss her getting a license to be a registered nurse in Connecticut. She was advised that she would have to go back to school in order to get same. This she was not willing to do.
After having lived with his mother and in rental apartments, one of their goals was to live in their own home. The defendant was able to purchase the present residence by getting a V.A. loan. The closing costs were paid by his brother — a gift.
The plaintiff stated that she and her husband started to experience trouble in their marriage soon after the purchase of the house. The house when purchased was not in very good shape. The defendant had to replace the electrical system, fix the roof and replace the water tank. The defendant was continually fixing the house. He worked 60 to 80 hours a week according to his wife and on weekends he cut wood and delivered it. On Sundays he delivered newspapers.
During the years 1980 to 1983, she stated her husband began drinking and would never engage in conversation or discuss matters with her.
The plaintiff's health situation, as testified to by her, is that during the 1970's and 1980's she had migraine attacks, and that she presently has high blood pressure and allergies to dust and mold. As a result of these allergies, she only does house cleaning a couple of times a week. She went back to work during the middle of the 1980's. She is presently working as a home health care aide for Kimke Quality Care. She works 26 hours a week. She has an opportunity to work more hours but prefers not to since the extra hours are not guaranteed. Health care is given to Medicaid or Medicare patients. At the present time she pays approximately $7.00 for her high blood pressure prescription. Her COBRA coverage cost her $180.00 a month plus the cost of visits to her doctor.
The house was purchased in 1970 for $60,000. The mortgage was V.A. for the full purchase price. At the time of the hearing, the mortgage was $48,000. The house today, CT Page 11834 according to the plaintiff, is in terrible shape; rain leaking into house, furnace does not work. They have a wood stove in the living room which heats that room and bedrooms upstairs if doors are left open. There is also no heat in the kitchen or dining room. The children have a space heater in their bedroom. There are rats and mice in the house. An opossum is living in the garage. The garage is full of her husband's tools even though he moved out a year ago. She testified she has not been in the garage for ten years.
The defendant husband was born in Norwalk in 1945. He attended Joel Barlow High School, took a course in electronics prior to entering the Air Force where he also took electronic courses. Upon separation from the Air Force, he took a heavy equipment course in New Jersey and then went with D'Addario Brothers in Georgetown. In July of 1978, he went to work for his present employer, Thomas Refuse. His work habits concerning the weekends have already been indicated.
His general health is good except he does claim to have some problems with his knee snapping out at times. Approximately six years ago, he started drinking and continued until approximately four years ago when he stopped and entered Alcoholics Anonymous which he presently attends.
The defendant admits that he is not a very frugal person and that he never really felt good about getting married but felt that he had to do the right thing. He has expressed a desire to keep the home which he claims means a lot to him and wants the court to act upon this request.
It is found by the court that the underlying cause and the breakup of the marriage is the defendant's feeling that he was obligated to marry his wife because he wanted to do the right thing. The wife expressed, during her testimony, that she felt this was the basic problem in their marriage. The defendant apparently has never enjoyed married life or family life. His conduct during the marriage was evidence of his feeling. The couple last had sex in the early 1980's. According to the plaintiff, there was no marriage three years before the defendant started to drink. She indicated her husband does not discuss or argue — he just walks out the door. She says the defendant has not started a conversation with her, except once concerning his niece, in the last six CT Page 11835 years.
The court finds that the cause for the breakdown of the marriage was the defendant's actions.
The main asset in the marriage is the family home at 40 Pembroke Road, Danbury. The wife has set a value of $110,000 in her financial affidavit. She indicates a mortgage of $48,000 on the property, leaving an equity of $62,000. The defendant in his financial affidavit shows a value of $85,000 for the house with a mortgage of $47,700, leaving an equity of $37,300. According to the defendant's affidavit, the parties recently obtained a market analysis from William Pitt Realtor who placed a value of $70,000 to $100,000 on the property in its present condition. The plaintiff wife testified that a realtor had been out on the property for appraisal and put a value of $100,000 on it. The court finds the value of the property to be $100,000.
In her financial affidavit, the plaintiff wife indicates that she has a weekly wage from her employer, Kimberly Quality Care, of $240.00 with total deductions of $40.79, leaving a net weekly wage of $199.21. She shows support for the children from her husband at $308.00, with a total of net weekly income of $507.21. Other than the home, she shows an asset of a 1986 Buick station wagon with a value of $3,200; Union Savings Bank Accounts, total amount of $360.00.
The defendant's financial affidavit shows an income from his employment of $918.38 a week, less expenses of $267.32, indicating a net weekly earning of $651.06. He further shows a total weekly expense or liability of $833.19, indicating a deficit of $182.13 a week. The affidavit further discloses that he has total assets of $35,710.92 with his liabilities amounting to $7,500.00. Under individual assets, he shows a banking account and checking account with an approximate balance of $1,500.
With other personal property as a heading, he indicates a value of $3,520 and these are for his chain saw, leaf vacuum and lawn mower, go-cart, boat, coin collection, parts to a 1963 and 1965 Corvair, log splitter, etc. For motor vehicles, he indicates a Model 1983 Chevrolet truck with a value of $3,000.; a Model 1971 Ford truck with a value of $200; a Harley-Davidson motorcycle with a value of $6,000; CT Page 11836 and a 1965 Chevrolet Corvair no value. For life insurance he indicates he has Guardian Life Insurance Company, the policy face value $25,000, cash surrender value $48.42; Aide Association for Lutherans face value $5,000, cash surrender value $1,255; Met Life Insurance face value $5,000, cash surrender value $1,287.50.
Having carefully reviewed all of the evidence and taking into consideration the factors mandated in Connecticut General Statutes, Secs. 46b-81 and 46b-82, the court further finds and orders as follows:
1. The marriage has broken down irretrievably, there is no prospect for reconciliation and a decree of dissolution may enter.
2. The minor children to the wife. Reasonable, liberal and flexible visitation to the husband.
3. Child support in accordance with the guidelines amounting to $280 per week.
4. Husband shall supply medical and dental insurance for the minor children. The husband shall be responsible for one-half of all unreimbursed medical, dental, optical, orthodontia, and medications, after a deductible of $150 per child per year. The year shall run from January 1 to December 31.
5. The husband and wife each shall maintain all current life insurance benefiting the children exclusively until the youngest child turns 21 years of age.
6. The defendant husband shall pay the plaintiff wife alimony in the amount of $1.00 per year.
Each party shall retain all other assets and debts appearing on his or her own financial affidavits filed at the time of the marriage dissolution. Each of the parties shall be responsible for the payment of his or her own attorney's fees and costs.
McGrath, J. CT Page 11837